[Cite as *State v. Wingfield*, 2014-Ohio-2053.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100020**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## DANIEL WINGFIELD

DEFENDANT-APPELLANT

**JUDGMENT:**
REVERSED, SENTENCE VACATED,
DEFENDANT DISCHARGED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-13-571453-A

**BEFORE:** Blackmon, J., Jones, P.J., and Rocco, J.

**RELEASED AND JOURNALIZED:** May 15, 2014

**ATTORNEY FOR APPELLANT**

Kevin M. Cafferkey
2000 Standard Building
1370 Ontario Avenue
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By:   Edward D. Byrdle
Assistant County Prosecutor
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

PATRICIA ANN BLACKMON, J.:

{¶1} Appellant Daniel Wingfield appeals his conviction and assigns the following errors for our review:

I. The court's guilty verdict of having a weapon while under disability in violation of 2923.13(A)(3) was based upon insufficient evidence.

II. The court's guilty verdict of having a weapon while under disability was in violation of 2923.13(A)(3) was against the manifest weight of the evidence.

III. The court erred when it imposed costs upon defendant without notifying him of them in open court.

IV. The court erred when it improperly informed the defendant of his post-release requirements.

{¶2} Having reviewed the record and pertinent law, we reverse Wingfield's conviction, vacate the sentence, and discharge the defendant. The apposite facts follow.

{¶3} On February 20, 2013, the Cuyahoga County Grand Jury indicted Wingfield on one count each of carrying a concealed weapon, having weapons while under disability, and tampering with evidence, with a one-year firearm specification attached. On March 1, 2013, Wingfield pleaded not guilty at his arraignment, and several pretrials followed. On May 28, 2013, the matter proceeded to a jury trial, with the charge for having weapons under disability being tried separately to the court.

{¶4} At trial, Officer Eric Newton of the Cleveland Police Department's Fourth District testified that on February 4, 2013, at approximately 6:00 p.m., he was on routine patrol with Officer Shane Bauhof in the area of East 103rd Street and Aetna Avenue in Cleveland, Ohio. Officer Newton described the location as a high crime area with

known gang activity, where it is not uncommon to hear gunshots being fired, and where he has made numerous arrests.

{¶5} He testified that as they were traveling west on Aetna Avenue, he observed a heavyset woman standing with a man at the intersection of East 103rd Street. He was certain that a hand-to-hand exchange took place, wherein the man handed the woman an unidentified object and the woman handed the man what appeared to be cash. Officer Newton testified that, in his experience, the behavior he observed was consistent with a drug transaction.

{¶6} The officers approached the intersection, the man saw the police cruiser, crossed the street, and ran towards the Sunny Corner Store. Officer Newton, a passenger in the police cruiser, exited the vehicle and proceeded to pursue the man into the store.

{¶7} Officer Newton testified that once both he and the man were inside the store, he recognized the man as Wingfield, and ordered him, by name, to stop. For a moment, he lost sight of Wingfield when Wingfield ducked around the corner of the counter located at the front of the store. Seconds later, Wingfield stood up, put his hands out and stated he had gone in the store to purchase Black and Mild cigars.

{¶8} Wingfield told the officer that he only had a small amount of marijuana on his person. Officer Newton stated that Wingfield handed over a small bag of marijuana after he was patted down and led out of the store.

**{¶9}** While in the store, Officer Bauhof found a gun on a shelf in the area where Wingfield had crouched down. Officer Newton testified that he and Officer Bauhof asked the store owner about the gun. The store owner responded that it was not his gun.

**{¶10}** Officer Newton stated that he never saw Wingfield with the gun, that many individuals had been in the store that day, and that anyone could have entered the area where the gun had been found.

**{¶11}** Officer Bauhof, who had entered the store moments after Officer Newton, testified that he had lost all visual contact with Wingfield until after he had been apprehended. Officer Bauhof asked the store owner whether he had seen Wingfield throw anything away, but the store owner indicated he did not know. Officer Bauhof found the loaded gun sitting upside down on a box pointing toward the peg board and leaning against another box.

**{¶12}** Officer Bauhof stated that dispatch ran the serial number of the gun, but did not find a registered owner. Both officers remained on the scene until the Scientific Investigative Unit ("SIU") arrived and dusted the gun for fingerprints. No fingerprints were found on the gun.

**{¶13}** Officer Bauhof stated that after they had transported Wingfield down to central booking and were going up in the elevator, Wingfield indicated that the most he could be charged with was carrying a concealed weapon. Wingfield also stated: "I should have blown down on you." Officer Bauhof testified that he took Wingfield's comment as an attempt to make him angry.

**{¶14}** The store owner, Rayan Morris, testified that the gun did not belong to him and that he was not allowed to carry a gun because he was on probation. Morris said that he did not see a gun when Wingfield ran into his store, and he stated that the area of the store where Wingfield had crouched down was publicly accessible; that there was no reason for Wingfield to be there because that is where he unloads merchandise and supplies.

**{¶15}** Detective Gerald Sowul, from the Cleveland Police Department's SIU, testified that they swabbed the gun for DNA, but the crime lab indicated that the swab could not be tested because the gun was not associated with a violent crime. Detective Sowul confirmed that no fingerprints were found on the gun.

**{¶16}** The jury acquitted Wingfield of carrying a concealed weapon and of tampering with evidence. In the matter tried separately to the bench, the trial court found Wingfield guilty of having weapons while under disability. On June 20, 2013, the trial court sentenced Wingfield to two years in prison.

## Sufficiency of Evidence

**{¶17}** In the first assigned error, Wingfield argues his conviction was not supported by sufficient evidence.

**{¶18}** The sufficiency of the evidence standard of review is set forth in *State v. Bridgeman*, 55 Ohio St.2d 261, 381 N.E.2d 184 (1978), syllabus:

> Pursuant to Criminal Rule 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt.

*See also State v. Apanovitch*, 33 Ohio St.3d 19, 23, 514 N.E.2d 394 (1987); *State v. Davis*, 49 Ohio App.3d 109, 113, 550 N.E.2d 966 (1988).

**{¶19}** *Bridgeman* must be interpreted in light of the sufficiency test outlined in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶20}** An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Consequently, the reviewing court ultimately must determine not whether the evidence is to be believed, but whether, if believed, the evidence against the defendant would support a conviction. *State v. Thompkins,* 78 Ohio St.3d 380, 678 N.E.2d 541 (1997).

**{¶21}** Pursuant to R.C. 2923.13(A)(3), the statutory elements for the offense of having a weapon while under disability are that no person shall knowingly acquire, have, carry, or use any firearm and have a previous conviction for possession of drugs.

**{¶22}** In the instant case, Wingfield argues that the state failed to present evidence that he exercised dominion and control of the gun that was found in an area accessible to the public; consequently, the trial court should have granted his Crim.R. 29 motion for acquittal. We agree.

{¶23} In the instant case, Officer Newton testified that after pursuing Wingfield into the store, he lost sight of him momentarily, and then saw him stand up next to the far end of the counter where the gun was found. Here, although Officer Newton testified that he lost sight of Wingfield momentarily, he did not testify that this span of time was sufficient for Wingfield to take the gun from his person, wipe it clean of prints, carefully place it upside down between two boxes, and point it towards the peg board.

{¶24} Instead, from Officer Newton's testimony, we picture a fast unfolding of events from the moment he pursued Wingfield into the store, ordered him by name to stop, to when Wingfield ducked behind the counter and then stood up, and proclaimed that he only had a small amount of marijuana. From Officer Newton's testimony, the jury, in acquitting Wingfield of carrying a concealed weapon and of tampering with evidence, most likely concluded that the momentary span of time when Wingfield ducked out of view was insufficient to effect placing the gun on the shelf in the manner described above.

{¶25} In addition, neither the two officers, nor the store owner testified that they saw Wingfield with a gun. Further, the gun was discovered in an area of the store that was accessible to the public and the evidence established that there had been a lot of customer traffic in the store that day. Finally, the evidence established that no fingerprints were found on the gun.

{¶26} Thus, based on the testimony of how the chase and quick apprehension of Wingfield unfolded, it is conceivable that any of the many customers or individuals who

came in and out the store that day, placed the gun where it was found. Consequently, even in reviewing the above in a light most favorable to the prosecution, we cannot conclude that the state proved beyond a reasonable doubt that Wingfield actually or constructively possessed the gun found on the shelf in the store.

{¶27} Nonetheless, the state counters that flight is consciousness of guilt and that Wingfield, upon seeing the police, ran into the store so that he could hide the gun before being apprehended. Still, this is not conclusive. It is also conceivable that Wingfield was attempting to hide the marijuana that he later admitted he possessed. Officer Newton admitted as much. The following exchange took place on cross-examination:

> Q. As far as you know, when you said you saw him duck down by these boxes, certainly he could have been putting weed in his pants, correct? That could have happened, couldn't it?
>
> A. Yes. There is that possibility, sir.
>
> Q. I mean, you found the weed right on him, right?
>
> A. Yes, sir.

Tr. 174.

{¶28} The state also counters Wingfield's statements that he could only be charged with carrying a concealed weapon and that he should have "blown down on" the officers, is consciousness of being found in possession of the gun. However, Office Bauhof perceived that Wingfield made the statements in an attempt to make him upset.

{¶29} Finally, it is noteworthy that the jury acquitted Wingfield of carrying a concealed weapon and of tampering with evidence. The acquittal on the carrying a

concealed weapon charge indicates that the jury did not conclude that Wingfield actually or constructively possessed the gun.

{¶30} Moreover, the acquittal on the tampering with evidence charge, a charge that flowed from Wingfield's alleged attempts to hide the gun, indicates that the jury did not conclude from the testimony that he had sufficient time to hide the gun when he ducked behind the counter.

{¶31} An appellate court is not permitted to speculate about the reason for the inconsistency when it determines the validity of a verdict. *State v. Morris*, 8th Dist. Cuyahoga No. 94923, 2011-Ohio-824, citing *State v. Trewartha*, 165 Ohio App.3d 91, 2005-Ohio-5697, 844 N.E.2d 1218, ¶16 (10th Dist.). We conclude, without speculating, that the state failed to present sufficient evidence to prove beyond a reasonable doubt that Wingfield was guilty of having weapons while under disability. As such, Wingfield's motion for acquittal should have been granted. Accordingly, we sustain the first assigned error, vacate Wingfield's conviction, and order him discharged.

{¶32} Our disposition of the first assigned error, renders the remaining assigned errors moot. App.R. 12(A)(C)(2).

{¶33} Judgment reversed, sentence vacated, and defendant discharged.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
PATRICIA ANN BLACKMON, JUDGE

LARRY A. JONES, SR., P.J., CONCURS;
KENNETH A. ROCCO, J., DISSENTS
(SEE ATTACHED DISSENTING OPINION)


KENNETH A. ROCCO, J., DISSENTING:

{¶34} In my view the evidence was sufficient to support Wingfield's conviction for having weapons while under disability under R.C. 2923.13. Because I would affirm the conviction, I dissent from the majority's opinion holding otherwise. However, the record also demonstrates that the trial court made two sentencing errors that must be corrected. Accordingly, I would affirm in part and reverse in part and I would remand the case for the limited purpose of correcting the sentencing errors.

{¶35} The evidence presented at trial amply supported Wingfield's conviction for having weapons while under disability. I take issue with the majority's treatment of the evidence on several grounds. First, the majority opinion characterizes the area where Wingfield had ducked down and where the gun was found as being "accessible to the public." Maj. Op. ¶ 25. But the trial court heard testimony from the store clerk that this was his "private area." Tr. 192. The clerk testified that he used this area to store goods for restocking, that the stacked boxes where the gun was found contained surplus

items for sale, and that people do not hang out in that area of the store. *Id.* The majority opinion makes no mention of this testimony.

**{¶36}** I also disagree with the majority's conclusion that there was insufficient evidence to support the conviction because the state failed to demonstrate that Wingfield had sufficient time to hide a gun. According to the majority opinion, "[A]lthough Officer Newton testified that he lost sight of Wingfield momentarily, he did not testify that this span of time was sufficient for Wingfield to take the gun from his person, wipe it clean of prints, carefully place it upside down between two boxes, and point it towards the peg board." Maj. Op. ¶ 23. First, there is no evidence that the gun was "carefully" placed on the boxes. And I fail to see how the gun's placement "towards the peg board" has any bearing on how much time it would take Wingfield to stash the gun. Finally, there is no reason to believe that Wingfield would have needed time to wipe the gun clean of prints. The crime took place in Cleveland in February and so the trial court could easily infer that Wingfield was wearing gloves that day.

**{¶37}** Finally, I take issue with the majority's reliance on the fact that the jury had acquitted Wingfield for the separate charges of carrying a concealed weapon and tampering with evidence. Maj. Op. ¶29-30. Because counts within an indictment are not interdependent, we have held that consistency between verdicts is unnecessary. *Morris*, 8th Dist. Cuyahoga No. 94923, 2011-Ohio-824, ¶ 12. A conviction should generally be upheld regardless of whether it is rationally compatible with a verdict for acquittal on another charge within an indictment. *Id.* On appeal, we "not permitted to

speculate about the reason for the inconsistency" when determining whether one of the verdicts is valid. *Id.*, citing *Trewartha*, 165 Ohio App.3d 91, 2005-Ohio-5697, 844 N.E.2d 1218, ¶16.

**{¶38}** In spite of the above, the majority finds it "noteworthy" that the jury acquitted Wingfield for carrying a concealed weapon and for tampering with evidence. Maj. Op ¶29. The majority opinion further concludes that the jury's verdicts on these other counts indicates that the jury must have concluded that (1) Wingfield did not possess the gun; and (2) Wingfield did not have sufficient time to hide a gun when he ducked behind the counter. *Id.* ¶ 29-30. Under the law, the jury's verdicts on these other counts is irrelevant to the question of whether there was sufficient evidence for the trial court to convict Wingfield for the charge that is the subject of this appeal. It is, therefore, inappropriate for the majority to discuss the jury's verdicts on those separate charges.[1]

**{¶39}** The issue on appeal is whether there was sufficient evidence that Wingfield had constructive possession of the firearm. The state was required to prove that Wingfield exercised dominion and control over the firearm that he was conscious of its presence. *See State v. Washington*, 8th Dist. Cuyahoga Nos. 98882 and 98883, 2013-Ohio-2904, ¶ 22. Viewing the evidence in the light most favorable to the

---

[1]The majority does cite to our decision in *State v. Morris* and acknowledges that we are not permitted to speculate about the reasons for an inconsistent verdict. I am, therefore, perplexed as to why the majority discusses the jury's verdicts on these other counts and why it attempts to discern what the jury must have concluded.

prosecution, I would hold that reasonable minds could conclude that Wingfield constructively possessed the firearm.

{¶40} Wingfield fled from the officers and ran into the store where he was found ducking down in a private area. After ducking down, Wingfield willingly approached the officers and admitted to having marijuana. Wingfield told the officers that he went into the store to purchase Black and Mild cigars, but there were no cigars in the area where he had ducked down, nor any other goods for sale. Law enforcement found a loaded gun in the location where Wingfield had ducked down. The store clerk was the only person who used this area of the store, and he testified that the firearm did not belong to him. The trial court was free to infer that Wingfield had ducked down to conceal the firearm. Because the state presented sufficient evidence to support the conviction, I would overrule the first assignment of error.

{¶41} Because I would overrule the first assignment of error, I would also review Wingfield's remaining three assignments of error. In his second assignment of error, Wingfield argues that his conviction was against the manifest weight of the evidence. I disagree. In support of this argument, he asserts that there were other plausible explanations as to how the firearm ended up in the store. Specifically, Wingfield posits that a gang member could have left it there or that it could have belonged to the store clerk, who was not allowed to carry a gun because of a previous marijuana conviction. But the store clerk testified that it did not belong to him, and the trial court was free to credit this testimony. The store clerk also testified that this was a private area for his

personal use. The record does not indicate that the trial court clearly lost its way in convicting Wingfield nor that the conviction created a manifest miscarriage of justice. *See State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997) (setting forth the standard of review for a challenge based on the manifest weight of the evidence). I would, therefore, overrule the second assignment of error.

**{¶42}** I would, however, sustain Wingfield's third and fourth assignments of error. Regarding the third assignment of error, the trial court did err in imposing court costs on Wingfield without first notifying him about the fines in open court. *See State v. Joseph*, 125 Ohio St.3d 76, 2010-Ohio-954, 926 N.E.2d 278, ¶ 1. The proper remedy is to remand the case and to order that the trial court issue a new sentencing entry that deletes the imposition of court costs. *See, e.g., State v. Shaffer*, 8th Dist. Cuyahoga, Nos. 95273 and 95274, 2011-Ohio-844, ¶ 18-19.

**{¶43}** Turning to the fourth assignment of error, I agree with Wingfield that the trial court erroneously informed him that a three-year period of postrelease control was a mandatory part of his conviction for having weapons while under disability. Wingfield was convicted of a third-degree felony. The duration of postrelease control for a third-degree felony is set by R.C. 2967.28(C), and we have held that, under this provision, the specific duration of postrelease control is discretionary. *State v. McGhee*, 8th Dist. Cuyahoga No. 95036, 2011-Ohio-619, ¶ 11. Further, this discretion is left to the parole board, and not the court. *Id.* When R.C. 2967.28(C) is implicated, the trial court is

"only required to put the appellant on notice that he *may* be subject to postrelease control for up to three years." (Emphasis added.) *Id.*

{¶44} In the instant case, the trial court informed Wingfield at sentencing that "[y]ou'll be subject to three years postrelease control upon your release * * * ." Tr. 332. The state concedes that this language suggests that the imposition of postrelease control was mandatory, not discretionary. I would, therefore, sustain the fourth assignment of error. The proper remedy is to remand the case for the limited purpose of imposing discretionary postrelease control pursuant to R.C. 2967.28(C) on Wingfield's conviction for having weapons while under disability. *See State v. Freeman*, 8th Dist. Cuyahoga No. 100521, 2014-Ohio-1732, ¶ 11.

{¶45} Because the conviction for having weapons while under disability was supported by sufficient evidence and was not against the manifest weight of the evidence, I would affirm the trial court's conviction for having weapons while under disability. Because the majority opinion decides otherwise, I respectfully dissent. However, for the aforementioned reasons, I would reverse Wingfield's sentence and remand with instructions that the trial court: (1) issue a new sentencing entry that deletes the imposition of court costs; and (2) impose discretionary postrelease control pursuant to R.C. 2967.28(C).