[Cite as *State v. Roberts*, 2025-Ohio-2872.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 24AP-264 |
| v. | : | (C.P.C. No. 21CR-4576) |
| Devante M. Roberts, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on August 14, 2025

**On brief:** *Shayla D. Favor*, Prosecuting Attorney, and *Seth L. Gilbert,* for appellee.

**On brief:** *Rancour Scarsella LLC*, and *Paul L. Scarsella*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

BOGGS, J.

{¶ 1} Defendant-appellant, Devante M. Roberts, appeals the judgment of the Franklin County Court of Common Pleas convicting him of one count of having a weapon while under disability, in violation of R.C. 2923.13, a felony of the third degree. For the following reasons, we affirm the trial court's judgment.

## I. PROCEDURAL HISTORY AND FACTS

{¶ 2} The facts underlying this case occurred on October 23, 2021 at a Speedway gas station on Weber Road in Columbus, Ohio. On November 2, 2021, Roberts was indicted for one count of aggravated robbery with a firearm specification, one count of theft, two counts of receiving stolen property, and one count of having weapons while under disability. Upon agreement of the parties, the plaintiff-appellee, State of Ohio, dismissed the counts of theft and two counts of receiving stolen property of the indictment.

{¶ 3}    At trial, Dawn Kereluik testified that on the morning of October 23, 2021 she was sitting in the front passenger seat of her car while her partner, Renee Walls, pumped gas and then went inside the Speedway gas station store.  Kereluik stated that she was reading the news on a tablet in the car when a man opened the driver's side door and sat in the driver's seat.  Kereluik testified that she told him he was in the wrong car to which he replied "no, I'm not" and pulled out a firearm, which he pointed at her abdomen.  Kereluik stated that the man grabbed two cell phones from the center console, grabbed her purse, put the gun in his pocket, said "I'm really sorry about this, but I don't have any money," and started to head toward his car.  Kereluik stated:

> About that time Renee came out of Speedway, saw him carrying my purse and basically chased him down to his car. She was pounding on the window with a bottle of Mountain Dew trying to get the window open. Then he pulled away from her. She was the one who got the license plate number. She actually wrote it in the dirt of the hood.

(Nov. 7, 2023 Tr. at 48.)

{¶ 4}    Kereluik described the assailant as a thin, African-American man who was wearing a dark hoodie with tan khaki pants and a pair of converse sneakers that he had pushed the heel down and was wearing "like a pair of slippers."  In the trial court, Kereluik identified Roberts as the man who robbed her.  Kereluik also stated that the vehicle the assailant was driving had New York license and that Walls was able to write down the license plate number before the man left the Speedway.

{¶ 5}    Kereluik also testified that, shortly after the incident at the Speedway, a Columbus police officer told her that they had apprehended a suspect and then took her to a Super 8 motel to identify the suspect and her things, including her ID, credit cards, social security cards, and purse.  On cross-examination, Kereluik admitted that, after a traumatic event in 2002, she has memory issues.

{¶ 6}    Walls, Kereluik's partner, also testified at trial that on the morning of October 23, 2021 she and Kereluik stopped at the Speedway to get gas on their way to a renaissance festival.  Walls stated that she went into the gas station to buy a Mountain Dew and to pay for gas and that, when she came back outside, she noticed an unknown man sitting in the car with Kereluik.  Walls followed the man when he exited the car and then noticed that he had her and Kereluik's belongings.  "I reached over and tried to take it from

him, and he jerked away from me and got in the car, closed the door and locked it. I tried to take out his window with my plastic bottle of Mountain Dew, but it didn't do a whole lot of good. He just slowly drove away like nothing was going on." (Tr. at 76.) In court, Walls identified Roberts as the man from the Speedway gas station.

{¶ 7} Columbus police officer Jonathan Randle also testified at trial. Officer Randle stated that he responded to a report of an armed robbery at a Speedway on the morning of October 23, 2021 and that he was wearing a body camera that day. The trial court watched footage of his interaction with Kereluik, including her describing the assailant. Officer Randle testified that a family member of one of the victims used a GPS locator application to track one of the stolen phones, which led the police to a Super 8 motel north of the Speedway. The trial court then viewed body-camera footage of Officer Randle driving up to the Super 8 motel and identifying a car with plates that matched Walls's description and the reported license plate. Officer Randle then testified that they apprehended a suspect in the parking lot at the Super 8 motel, and he identified that person as Roberts. Officer Randle also stated that he found credit cards, social security cards, and Ohio driver's licenses, all in Kereluik's and Walls's names, in Roberts's pockets.

{¶ 8} The state's last witness was Detective James Long with the Columbus Police Department, Crime Scene Unit. Detective Long testified that he first went to the Super 8 motel and was told by other officers on the scene that there was no video at the Speedway gas station. Detective Long also testified that he took photographs of items found in Roberts's pockets, his motel room at the Super 8, and items from the car. Detective Long stated that officers found a gun in the back pocket of the front passenger seat of the car at the Super 8 motel and that Roberts had the keys to the car in his possession.

{¶ 9} The state then presented an exhibit stipulating that on October 23, 2021, Roberts was under indictment in Erie County, Ohio, for a felony offense of violence.

{¶ 10} Roberts's counsel then made a Crim.R. 29 motion, arguing that the state failed to carry its burden of proof beyond a reasonable doubt in regard to the counts of aggravated robbery and having a weapon while under disability. The trial court denied the motion, stating there has "been enough evidence taken in [a] light favorable to the State to move forward with the jury in this matter." (Nov. 8, 2023 Tr. at 146.)

{¶ 11} The defense called Dr. Melissa Berry, who the court recognized as an expert on eyewitness memory and identification. Dr. Berry testified on the way memory works and about factors, such as stress and the presence of a weapon, that can affect a witness's ability to retrieve memories from witnessing events. The defense then played body-camera footage of a Columbus police officer picking up Kereluik from the Speedway gas station to take her to the Super 8 motel to identify Roberts as the assailant.

{¶ 12} Dr. Berry stated that "the inherent suggestive nature of show-ups is problematic, and that's why researchers recommend that show-ups only be used when there's no other alternative." *Id.* at 186. Dr. Berry indicated that in the body-camera footage she heard Kereluik state that the police had told her that "they got him." *Id.* Dr. Berry testified that it

> adds to the suggestive nature of a show-up. I mean, clearly if you're having a witness taken to another location to either say yes or no, clearly there's already a suggestive nature to that. But to have told her, we got him, and further say he was found with your belongings, again, that expectation that he must be the guilty party and there's no other explanation, there's no other intervening variable, they said they got him, that plants in the witness's mind that expectation. So it would have been strongly preferred had there been an actual line-up with other fillers to know a truer test of the witness's memory.

*Id.* at 187.

{¶ 13} On cross-examination, Dr. Berry stated that "my understanding is they have written about show-ups as being inherently suggestive, but . . . not prohibited legally." *Id.* at 195.

{¶ 14} Roberts also testified at trial. He stated that he did not rob Kereluik and that he got her property and car keys from a guy named Drew. He also testified that he did not know that there was a gun in the car. Roberts stated, "I was in a financial hardship, I was going through a lot of things with my family, I was very dependent on drugs . . . I was hanging with the wrong people, for sure, and I was making a lot of bad decisions." *Id.* at 210. He also stated he had previously been convicted of arson and gross sexual imposition. Roberts testified that he had not driven the car that day but that he had access to the car and confirmed that the keys were found in his pocket that day.

{¶ 15} On cross-examination, Roberts watched a portion of the video of his arrest.

Q. Mr. Roberts, did you have an opportunity to watch a portion of the video where you're interacting with Officer Corpman after you were arrested and in a police car at the Super 8 Motel?

A. Yes.

Q. Upon hearing that, did you hear your own voice?

A. I did.

Q. Did you recognize your own voice?

A. I recognized my own voice.

Q. Did you tell the officer, Are you going to give me my gun back? What are you going to do with our firearm, along with describing . . . the legalities of keeping a gun separated from the clip?

A. That's what I observed. I don't remember saying it.

Q. But that's you and you did say it, didn't you?

A. That is my voice, yes, sir.

*Id.* at 219-220.

{¶ 16} Following Roberts's testimony, the defense rested and renewed its Crim.R. 29 motion for acquittal. The trial court again denied the motion, and the jury found Roberts not guilty of count one, aggravated robbery, but guilty of count two, having a weapon while under disability. The trial court sentenced Roberts to 24 months with the Ohio Department of Rehabilitation and Correction, to be served consecutively with the sentence in Erie County case No. 2022-CR370.

{¶ 17} Roberts now appeals.

**II. ASSIGNMENT OF ERROR**

{¶ 18} Roberts argues the following assignments of error:

(1) The trial court erred and thereby deprived appellant of due process of law as guaranteed by the fifth, sixth, and fourteenth amendments to the United States Constitution and Article 1, Section 10 of the Ohio Constitution by overruling Appellant's Crim. R. 29 motion for judgment of acquittal, as there was insufficient evidence to support a conviction.

> (2) Appellant's conviction was against the manifest weight of the evidence and thereby violated due process of law as guaranteed by the fifth, sixth, and fourteenth amendments to the United States Constitution and Article 1, Section 10 of the Ohio Constitution.

(Appellant's Brief at v.)

## III. ANALYSIS

### A. Assignment of Error No. 1

{¶ 19} In his first assignment of error, Roberts argues that the trial court erred in denying his Crim.R. 29 motion for acquittal.

{¶ 20} "Because a Crim.R. 29 motion questions the sufficiency of the evidence, '[w]e apply the same standard of review to Crim.R. 29 motions as we use in reviewing the sufficiency of the evidence.' " *State v. Brown*, 2016-Ohio-7944, ¶ 27 (10th Dist.), quoting *State v. Hernandez*, 2009-Ohio-5128, ¶ 6 (10th Dist.). To test the evidence for legal sufficiency, a reviewing court asks "whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt." *State v. Dent*, 2020-Ohio-6670, ¶ 15, citing *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds* as stated in *State v. Smith*, 1997-Ohio-355, fn 4. Legal sufficiency is a question of law that asks whether the state's evidence passes a "test of adequacy." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). A conviction resulting from "legally insufficient evidence constitutes a denial of due process." *Id.*, citing *Tibbs v. Florida*, 457 U.S. 31, 41 (1982). A reviewing court "will not disturb a verdict on appeal on sufficiency grounds unless 'reasonable minds could not reach the conclusion reached by the trier-of-fact.' " *State v. Ketterer*, 2006-Ohio-5283, ¶ 94, quoting *State v. Dennis*, 1997-Ohio-372, ¶ 51.

{¶ 21} R.C. 2923.13(A) states that "Unless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordinance . . . [if] the person is under indictment for or has been convicted of any felony offense of violence." Roberts argues that the state did not meet its burden in providing sufficient evidence that he had possession of the firearm found in the car. We note that a person may knowingly possess an object through either actual possession or

constructive possession. *State v. Walker*, 2016-Ohio-3185, ¶ 63 (10th Dist.). Actual possession occurs when a person has an item within his immediate physical control. *State v. Pilgrim*, 2009-Ohio-5357, ¶ 27 (10th Dist.), citing *State v. Saunders*, 2007-Ohio-4450, ¶ 10 (10th Dist.). Constructive possession, on the other hand, occurs "when a person knowingly exercises dominion and control over an object, even though the object may not be within the person's immediate physical possession." *Pilgrim* at ¶ 27, citing *State v. Hankerson*, 70 Ohio St.2d 87 (1982), syllabus. However, "the mere fact that property is located within premises under one's control does not, of itself, constitute constructive possession." *Hankerson* at 91. Instead, "[i]t must also be shown that the person was conscious of the presence of the object." *Id*. As it relates specifically to firearms, "[c]onstructive possession of a firearm exists when a defendant knowingly has the power and intention at any given time to exercise dominion and control over a firearm, either directly or through others." *State v. Dorsey*, 2005-Ohio-2334, ¶ 32 (10th Dist.).

{¶ 22} Here we find that the trial court did not err in denying Roberts's Crim.R. 29 motion, as there was sufficient evidence presented to the jury from which it could determine Roberts had actual or constructive possession of the firearm found in the car. This includes but is not limited to Kereluik's testimony that Roberts had a gun at the Speedway gas station and that the keys to the car were found in Roberts's pocket at the time of his arrest. While Roberts denied knowing about the firearm in the car at trial, he acknowledged that he asked the police officers at the time of his arrest if he would get his gun back. This constitutes sufficient evidence for a factfinder to find that Roberts had possession of the firearm in the car.

{¶ 23} Roberts also argues that the trial court failed to give the jury proper instructions on constructive possession and that, coupled with the allegedly insufficient evidence, his conviction is based on speculation or unsupported inferences. We do not agree. Roberts's argument that the trial court erred in not instructing the jury is inapposite here, as he is challenging whether the evidence presented at trial was sufficient for a factfinder to convict. As we have already concluded, there was sufficient evidence to find that Roberts was conscious of the presence of the firearm and had the ability to exercise dominion and control over it. Accordingly, we overrule Roberts's first assignment of error.

### B. Assignment of Error No. 2

{¶ 24} In his second assignment of error, Roberts argues that his weapons under disability conviction was against the manifest weight of the evidence.

{¶ 25} In reviewing a challenge to the manifest weight of the evidence, "an appellate court may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Boyde*, 2013-Ohio-3795, ¶ 27, (10th Dist.), citing *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). Under Ohio law, "the trier of fact 'is free to believe or disbelieve all or any of the testimony,' . . . and . . . 'the weight to be given the evidence and credibility of the witnesses are primarily for the trier of facts.' " *State v. Douthitt*, 2019-Ohio-2528, ¶ 17 (10th Dist.), quoting *State v. Crosky*, 2008-Ohio-145, ¶ 78 (10th Dist.), and *State v. Thomas*, 70 Ohio St.2d 79, 79-80 (1982). A reviewing court "should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most ' "exceptional case in which the evidence weighs heavily against the conviction." ' " *Boyde* at ¶ 27, quoting *Thompkins* at 387, quoting *Martin*.

{¶ 26} Even if the jury disbelieved all of the testimony about the actual robbery, its weapons while under a disability verdict would not be against the manifest weight of the evidence, because there was evidence in the record from which a jury could determine Roberts had at least constructive possession of the firearm when he was arrested at the Super 8 motel. Roberts was pacing in front of the car, had the car keys in his pocket, and referred to the gun as "my gun" to police. In his testimony, Roberts also indicated that he had access to the car and that he was able to drive it if he asked Drew. With this evidence in the record, we do not agree with Roberts that the trial court lost its way or created a manifest miscarriage of justice in convicting Roberts of having a weapon while under disability.

{¶ 27} Roberts also argues that "the jury's decision to acquit Mr. Roberts of the Aggravated Robbery charge but find him guilty of the weapons charge shows that they clearly lost their way." (Appellant's Brief at 18.) However, a jury need not deliver rationally

consistent verdicts in order for the verdicts to be upheld. *State v. Crabtree*, 2010-Ohio-3843, ¶ 19 (10th Dist.), citing *State v. Trewartha*, 2005-Ohio-5697, ¶ 15 (10th Dist.). As long as sufficient evidence supports the jury's verdict at issue, other seemingly inconsistent verdicts do not undermine the otherwise sufficient evidence. *Id.* As we have already found that there was sufficient evidence to support Roberts's conviction, we find Roberts's argument here without merit. Accordingly, we overrule Roberts's second assignment of error.

## IV. CONCLUSION

{¶ 28} Having overruled both of Roberts's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN and MENTEL, JJ., concur.

————————————