[Cite as *State v. Allison*, 2021-Ohio-3723.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. Craig R. Baldwin, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2021CA00006 |
| WILLIAM FRANKLIN ALLISON | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING:      Criminal appeal from the Stark County Court of Common Pleas, Case No. 2020 CR 1214

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      October 18, 2021

APPEARANCES:

For Plaintiff-Appellee

KYLE L. STONE
Prosecuting Attorney
By: VICKI L. DESANTIS
Assistant Prosecutor
110 Central Paza South, Ste. 110
Canton, OH 44702

For Defendant-Appellant

D. COLEMAN BOND
116 Cleveland Avenue N.W
Suite 600
Canton, OH 44702

.

*Gwin, J.,*

{¶1}   Defendant-appellant William Allison ["Allison"] appeals his convictions and sentence after a jury trial in the Stark County Court of Common Pleas.

*Facts and Procedural History*

{¶2}   On June 4, 2020, Officer Matthew Kruger of the Massillon Police Department responded to a telephone harassment/pandering obscenities report from April Tanner. Due to the neighborhood having an alert for Covid-19 issues, Officer Kruger did not speak with Tanner face-to-face but, rather, remained in his cruiser and spoke to April Tanner by telephone.   April Tanner reported Allison, her ex-boyfriend, threatening to send out nude pictures of her to her family and friends. Allison did send nude pictures of April to her 18-year-old daughter, Annabelle.

{¶3}   Officer Kruger testified that after speaking with April Tanner, he attempted to contact Allison, but was not able to contact him that day. On the following day Officer Kruger did contact Allison and placed him under arrest pursuant to an active warrant. Officer Kruger issued Allison a written summons instead of booking him into the jail due to Covid-19 concerns. Allison told Officer Kruger that he believed April Tanner hacked into his cell phone and she was the one exposing her pictures to other people.

{¶4}   April Tanner rents her home in Massillon, Ohio and lives there with her son, Benjamin, her daughter, Annabelle, and her daughter's fiancé, Damian Eccles. April met Allison in August 2018, through mutual friends, and at some point, considered herself Allison's girlfriend. The couple lived together from November of 2018 until January 2020. Allison helped pay bills, had a key to the home, kept clothes there and stayed most nights.   Tanner and Allison were both on the lease and were equal in taking ownership of

the rental property. Allison moved out of her residence in January 2020. After moving out, the couple were still on good terms and communicating, trying to work things out and get back together. Tanner and Allison continued dating after he moved out of the residence until the relationship ended in May 2020. However, despite their relationship ending Tanner and Allison never went longer than two days without contacting each other. Tanner admitted that she commonly exchanged nude photos with Allison during their relationship.

{¶5} On June 15, 2020, Tanner woke up around 6:30 A.M. and was drinking a cup of coffee, when she heard a knock on the door. Tanner looked out the window and did not see anyone; however, the knocking continued. Tanner cracked open the front door whereupon Allison jumped from the side of her house onto the front stoop. Allison asked to come inside explaining that he wanted to show her spamware that someone hacked into his phone and her phone. When Tanner said no, that she wanted to get dressed and did not want him in the house, he became forceful. Allison then began to push on the door. He eventually pushed so hard that it caused Tanner to fall backward into the wall behind the door.

{¶6} April Tanner testified that on the night before the incident, she was communicating with Allison through text messages. Tanner testified that during the conversation Allison asked her to come pick him up so they could go somewhere to talk, but she did not agree because it was late at night and she was already in bed.

{¶7} Benjamin Tanner recalled being awaken by hearing his mother screaming, "Get out, get out." Benjamin did not know who was in the house. Benjamin testified during Allison's jury trial that he "recognized that there was a threat,

my mom was screaming, so I hit him, we started fighting." 1T. at 243.[1] Benjamin testified punches were thrown and Allison put him in a chokehold; however, he managed to get out and Allison was subdued by Benjamin, April and Annabelle.

{¶8}    Allison punched Benjamin in the face six or seven times with a closed fist. When Allison began to squeeze Benjamin's throat Benjamin was unable to breath and became fearful for his life.  Ben testified Allison said, "If she didn't admit that she still loved him, he was going to kill me."

{¶9}    During the altercation, Damian called the police. Ben testified the police arrived, took over, and took pictures. Benjamin was treated at the hospital for the injuries he received during the altercation. Benjamin admitted that he told the police that Allison had thrown the first punch. He lied because he was afraid that due to his past history he would be in trouble if he had hit Allison first.

{¶10}  On July 13, 2020, an Indictment was returned by the Stark County Grand Jury, which indicted Allison on three counts of Aggravated Burglary [R.C. 2911.11(A)(1)(B)], each a felony of the first degree[2], one count of Domestic Violence [R.C. 2919.25(A)(D)(2)], a misdemeanor of the first degree[3], two counts of Assault [R.C. 2903.13(A)(C)] each a misdemeanor of the first degree[4] and one count of Nonconsensual Dissemination of Private Sexual Images [R.C. 2917.211(B)(F)(1)(a), a misdemeanor of the third degree.

---

[1] The transcript of Allison's jury trial will be referred to as "__T. at __", signifying the volume number and the page number.

[2] Against April Tanner,  Benjamin Tanner and  Annabelle  Tanner,

[3] Against April Tanner

[4] Against Annabelle and Benjamin Tanner

{¶11} At the conclusion of the evidence the Jury returned a verdict finding Allison guilty of Count II Aggravated Burglary [Benjamin Tanner], Count V Assault [Benjamin Tanner] and Count VII Nonconsensual Dissemination of Private Sexual Images. The Jury returned a not guilty verdict on Count I Aggravated Burglary [April Tanner]. Count III Aggravated Burglary [Annabelle Tanner], Count IV Domestic Violence [April Tanner], and Count VI Assault [Annabelle Tanner].

{¶12} Allison filed a Motion for Acquittal on December 4, 2020, arguing that there were improper jury instructions given and that the jury returned inconsistent verdicts.

{¶13} On December 14, 2020, the trial court indicated on the record that it was overruling Allison's Motion for Acquittal. The trial court sentenced Allison to an indefinite sentence of four to six years on Count II, found that Count V merged by operation of law, and sentenced Allison to sixty days on Count VII to run concurrently with Count II.

*Assignments of Error.*

{¶14} Allison raises four Assignments of Error,

{¶15} "I. THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION AGAINST THE APPELLANT, AND THE CONVICTION MUST BE REVERSED.

{¶16} "II. THE APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED, AND MUST BE REVERSED.

{¶17} "III. THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS RIGHTS UNDER THE 6TH AND 14TH

AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 10 OF THE OHIO CONSTITUTION.

{¶18} "IV. THE TRIAL COURT ERRED BY INSTRUCTING THE JURY ON THE THREE COUNTS OF AGGRAVATED BURGLARY WHEN IT WAS NOT SUPPORTED BY THE EVIDENCE, AND OVER THE APPELLANT'S OBJECTION."

I & II.

{¶19} In his First Assignment of Error, Allison contends that there is insufficient evidence to support his convictions. In his Second Assignment of Error, Allison contends his convictions were against the manifest weight of the evidence.

**Standard of Appellate Review– Sufficiency of the Evidence.**

{¶20} The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...." This right, in conjunction with the Due Process Clause, requires that each of the material elements of a crime be proved to a jury beyond a reasonable doubt. *Alleyne v. United States*, 570 U.S. __, 133 S.Ct. 2151, 2156, 186 L.Ed.2d 314 (2013); *Hurst v. Florida*, 136 S.Ct. 616, 621, 193 L.Ed.2d 504 (2016). The test for the sufficiency of the evidence involves a question of law for resolution by the appellate court. *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶30. "This naturally entails a review of the elements of the charged offense and a review of the state's evidence." *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶13.

{¶21} When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by State constitutional*

*amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997; Walker, at ¶30.* "The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus. *State v. Poutney,* 153 Ohio St.3d 474, 2018-Ohio-22, 97 N.E.3d 478, ¶19. Thus, "on review for evidentiary sufficiency we do not second-guess the jury's credibility determinations; rather, we ask whether, '*if believed*, [the evidence] would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Murphy,* 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001), *quoting Jenks* at paragraph two of the syllabus; *Walker* at ¶31. We will not "disturb a verdict on appeal on sufficiency grounds unless 'reasonable minds could not reach the conclusion reached by the trier-of-fact.'" *State v. Ketterer,* 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 94, *quoting State v. Dennis,* 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997); *State v. Montgomery,* 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶74.

**Issue for Appellate Review:** *Whether, after viewing the evidence in the light most favorable to the prosecution, the evidence, if believed, would convince the average mind of Allison's guilt on each element of the crimes for which he was convicted beyond a reasonable doubt.*

{¶22} In the case at bar, Allison was found guilty of Aggravated Burglary [Benjamin Tanner], Assault [Benjamin Tanner] and Nonconsensual Dissemination of Private Sexual Images.

{¶23} Allison first argues the finding by the jury that Allison was guilty of Aggravated Burglary as alleged in Count II of the Indictment is inconsistent with the jury

finding Allison not guilty of Aggravated Burglary as alleged in Count I and Count III of the Indictment and that the jury finding Allison guilty of Assault as alleged in Count V of the Indictment is inconsistent with the jury finding Allison not guilty of Domestic Violence as alleged in Count IV of the Indictment. [Appellant's brief at 20].

**A. Inconsistency in a verdict does not arise out of inconsistent response to different counts of the Indictment.**

{¶24}  In *State v. Gapen,* the Ohio Supreme Court reiterated,

First, "[i]nconsistent verdicts on different counts of a multi-count indictment do not justify overturning a verdict * * *." *State v. Hicks* (1989), 43 Ohio St.3d 72, 78, 538 N.E.2d 1030, *citing United States v. Powell* (1984), 469 U.S. 57, 68, 105 S.Ct. 471, 83 L.Ed.2d 461; *see, also, State v. Mapes* (1985), 19 Ohio St.3d 108, 112–113, 19 OBR 318, 484 N.E.2d 140. As we stated in *State v. Adams* (1978), 53 Ohio St.2d 223, 7 O.O.3d 393, 374 N.E.2d 137, paragraph two of the syllabus, "The several counts of an indictment containing more than one count are not interdependent and an inconsistency in a verdict does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same count." Thus, inconsistency of sentencing verdicts on the different counts does not require that Gapen's death sentence be vacated.

104 Ohio St.3d 358, 2004-Ohio-6548, 819 N.E.2d 1047, ¶ 138.

{¶25}  In the case at bar, the jury's verdicts are not inconsistent. While the same underlying conduct resulted in each of the counts, each count had distinct elements unrelated to the other offenses.  Count II alleged that Allison inflicted, or attempted or

threatened to inflict physical harm on Benjamin Tanner during the course of his trespass. Count I in contrast alleged that Allison trespassed with the intent to commit Domestic Violence in violation of R.C. 2919.25 and that he inflicted, or attempted to inflict physical harm on April Tanner. Count III of the Indictment alleged that Allison inflicted, or attempted or threatened to inflict physical harm on Annabelle Tanner during the course of his trespass. Likewise, in Count V of the Indictment alleged that Allison inflicted, or attempted or threatened to inflict physical harm on Benjamin Tanner while Count IV alleged that Allison committed Domestic Violence by inflicting, or attempting physical harm on April Tanner, a family member in violation of R.C. 2919.25. Though inconsistency can indicate confusion or doubt on the part of jurors, it can also indicate compromise or mercy. *State v. Trewartha,* 165 Ohio App.3d 91, 2005-Ohio-5697, 844 N.E.2d 1218, ¶ 16 (10th Dist.).

{¶26} Accordingly, we reject Allison's argument alleging inconsistent verdicts as it is based on different counts of the Indictment as well as different victims.

### B. Aggravated Burglary

{¶27} To be found guilty of aggravated burglary as charged in Count II of the Indictment, the jury would have to find beyond a reasonable doubt that Allison trespassed in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, and that Allison inflicted, or attempted or threatened to inflict physical harm on Benjamin Tanner. R.C. 2911(A)(1).

Physical harm to persons is defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).

{¶28} April Tanner testified that on June 15, 2020 Allison forced his way into the home without permission and that Annabelle Tanner, Benjamin Tanner and Damian Eccles were present in the home at that time. Benjamin Tanner testified that Allison punched him in his face with a closed fist. Benjamin Tanner was treated for his injuries. The jury was given pictures of scratches, cuts and a fat lip that Benjamin Tanner suffered as a result of Allison's actions. Further, Benjamin Tanner and April Tanner testified that Allison choked Benjamin and threatened to kill him.

### C. Assault

{¶29} To be found guilty of Assault as alleged in Count V of the indictment, the jury would have to find beyond a reasonable doubt that Allison knowingly caused or attempted to cause physical harm to another or to another's unborn. R.C. 2903.13(A). Physical harm to persons is defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).

{¶30} Benjamin Tanner testified that Allison punched him in his face with a closed fist. Benjamin Tanner was treated for his injuries. The jury was given pictures of scratches, cuts and a fat lip that Benjamin Tanner suffered as a result of Allison's actions. Further, Benjamin Tanner and April Tanner testified that Allison choked Benjamin and threatened to kill him.

{¶31} Viewing the evidence in the case at bar in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Allison had committed the crime of Aggravated Burglary as set

forth in Count II of the Indictment, and Assault as alleged in Count V of the Indictment. We hold, therefore, that the state met its burden of production regarding each element of the crime of Aggravated Burglary and Assault and, accordingly, there was sufficient evidence to submit the charge to the jury and to support Allison's convictions.

### D. Nonconsensual Dissemination of Private Sexual Images

{¶32}   R.C. 2917.211 provides, in relevant part,

(B) No person shall knowingly disseminate an image of another person if all of the following apply:

(1) The person in the image is eighteen years of age or older.

(2) The person in the image can be identified from the image itself or from information displayed in connection with the image and the offender supplied the identifying information.

(3) The person in the image is in a state of nudity or is engaged in a sexual act.

(4) The image is disseminated without consent from the person in the image.

(5) The image is disseminated with intent to harm the person in the image.

{¶33}   Annabelle Turner testified that on June 4, 2020 she received a text message from Allison telling her that Allison was going to send nude pictures of her mother to her family. 1T. at 221-222.  Annabelle Turner then received nude pictures of April Tanner. 1T. at 222. April Tanner testified that on June 4, 2020 she was having dinner with her family when Annabelle received a message together with nude photos of April's private parts.

1T. at 173.  April recognized the number as one of Allison's phone numbers. Id. April did not give Allison permission to send the photograph to anyone. 1T. at 174-175.

{¶34}  Viewing the evidence in the case at bar in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Allison had committed the crime of Nonconsensual Dissemination of Private Sexual Images as set forth in Count VII of the Indictment. We hold, therefore, that the state met its burden of production regarding each element of the crime of Nonconsensual Dissemination of Private Sexual Images and, accordingly, there was sufficient evidence to submit the charge to the jury and to support Allison's conviction.

### Standard of Appellate Review- Manifest Weight

{¶35}  As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient.  *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith, 80 Ohio St.3d 89, 684 N.E.2d 668, 1997–Ohio–355*; *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001).

"[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.

* * *

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with

the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

{¶36} The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve. *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Murphy*, 4th Dist. Ross No. 07CA2953, 2008–Ohio–1744, ¶ 31. Because the trier of fact sees and hears the witnesses and is particularly competent to decide whether, and to what extent, to credit the testimony of particular witnesses, the appellate court must afford substantial deference to its determinations of credibility. *Barberton v. Jenney,* 126 Ohio St.3d 5, 2010–Ohio–2420, 929 N.E.2d 1047, ¶ 20, *superseded by statute on other grounds as stated in In re Z.E.N., 4th Dist. Scioto No. 18CA3826, 2018-Ohio-2208, ¶ 27.* In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. Mahoning No. 99 CA 149, 2002–Ohio–1152, at ¶ 13, *citing State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999). Thus, an appellate court will leave the issues of weight and credibility of the evidence to the fact finder, as long as a rational basis exists in the record for its decision. *State v. Picklesimer*, 4th Dist. Pickaway No. 11CA9, 2012–Ohio–1282, ¶ 24.

{¶37} Once the reviewing court finishes its examination, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be

reversed and a new trial ordered.'" *State v. Thompkins, supra*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id.

**Issue for Appellate Review**: *Whether the jury clearly lost their way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.*

{¶38} In the case at bar, Allison argues that he had permission to be at the residence on June 15, 2020 and further that he told the police someone had hacked his cell phone.

{¶39} The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig,* 10th Dist. Franklin No. 99AP–739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714 (May 28, 1996). Indeed, the trier of fact need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, 10th Dist. Franklin No. 02AP–604, 2003–Ohio–958, ¶ 21, *citing State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke*, 10th Dist. Franklin No. 02AP–1238, 2003–Ohio–2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks*, 61 Ohio St.3d 259, 272, 574

N.E.2d 492 (1991), paragraph one of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997).

{¶40} In the case at bar, the jury heard April Tanner, Annabelle Tanner, Benjamin Tanner and Damian Eccles testify and be subjected to cross-examination. The jury viewed the evidence and heard Allison's statements to the police as well as his attorney's arguments and explanations about Allison's actions. The jury found Allison not guilty of two counts of Aggravated Burglary, Domestic Violence and Assault. Thus, a rational basis exists in the record for the jury's decision.

{¶41} We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. Based upon the foregoing and the entire record in this matter we find Allison's convictions are not against the sufficiency or the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided the matters before them. The jury heard the witnesses, evaluated the evidence, and was convinced of Allison's guilt. The jury neither lost his way nor created a miscarriage of justice in convicting Allison of Aggravated Burglary, Assault and Nonconsensual Dissemination of Private Sexual Images. Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crimes for which Allison was convicted.

{¶42} Allison's First and Second Assignments of Error are overruled.

III.

{¶43}   In his Third Assignment of Error Allison contends that his trial counsel was ineffective in failing to request that the trail judge instruct the jury on self-defense. Specifically, Allison argues that because Benjamin Tanner admitted to hitting Allison first, Allison was entitled to claim that he acted in self-defense. [Appellant's brief at 26].

**Standard of Appellate Review.**

{¶44}   To prevail on a Sixth Amendment claim alleging ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that his counsel's deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 694 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To show deficiency, a defendant must show that "counsel's representation fell below an objective standard of reasonableness." Id., at 688, 104 S.Ct. 2052.  And to establish prejudice, a defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id., at 694, 104 S.Ct. 2052.  *Andtus v. Texas,* 590 U.S. __, 140 S.Ct. 1875, 1881 (June 15, 2020).

**Issue for Appellate Review:** *Whether there is a reasonable probability that, but for counsel's failure to request a jury instruction on self-defense, the result of the proceeding would have been different.*

{¶45}   Under a theory of self-defense, the defendant claims that (1) he was not at fault in creating the situation giving rise to the affray; (2) he had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) he did not violate any duty to retreat or avoid the danger.  *State v. Robbins*, 58 Ohio St.2d 74, 388 N.E.2d 755 (1979),

paragraph two of the syllabus. If the evidence tends to support that the defendant acted in self-defense, then the prosecution must prove beyond a reasonable doubt that the defendant did not act in self-defense. R.C. 2901.05(B)(1). *State v. Gatewood,* 1st Dist. Hamilton No. C-190654, 21-Ohio-3325, ¶ 68. The state need only disprove one of the elements of self-defense beyond a reasonable doubt at trial to sustain its burden. *State v. Jackson*, 22 Ohio St.3d 281, 284, 490 N.E.2d 893(1986). *Accord, State v. Carney,* 10th Dist. Franklin No. 19AP-402, 2020-Ohio-2691, ¶31; *State v. Staats,* 5th Dist. Stark No. 2019CA00181, ¶ 28.

{¶46} In the case at bar, April Tanner testified that on June 15, 2020 Allison forced his way into the home without permission and that Annabelle Tanner, Benjamin Tanner and Damian Eccles were present in the home at that time. Allison asked to come inside explaining that he wanted to show her spamware that someone hacked into his phone and her phone. When Tanner said no, that she wanted to get dressed and did not want him in the house, he became forceful. Allison then began to push on the door. He eventually pushed so hard that it caused Tanner to fall backward into the wall behind the door.

{¶47} Thus, even though Allison may have believed that April Tanner had invited him to the home via text messages the prior evening, when he arrived she clearly and unequivocally told him not to come inside and further she tried to physically prevent Allison from entering. Any invitation, express or implied, was clearly revoked by April Tanner. By using force to enter the home, Allison became a trespasser. Therefore, Allison could not produce proof that he was not at fault in creating the situation giving rise to the affray.

{¶48} We find Allison has not demonstrated that the failure to instruct the jury on his claim of self-defense affected his substantial rights and that the outcome of the trial clearly would have been different but for the error. Sufficient evidence was presented for the state to prove, beyond a reasonable doubt, that Allison was at fault in creating the situation giving rise to the affray. Even had the jury had been instructed that Allison was presumed to have acted in self-defense, the state had rebutted any finding that Allison had acted in self-defense beyond a reasonable doubt. Therefore, Allison has failed to establish that he has been prejudice by trial counsel's performance.

{¶49} Allison's Third Assignment of Error is overruled.

IV.

{¶50} In his Fourth Assignment of Error Allison contends that the trial judge abused her discretion by overruling his objections to the trial court's proposed jury instructions. Specifically, Allison maintains that the three counts of Aggravated Burglary were duplicitous and therefore likely to led to confusing the jury and result in the jury returning an inconsistent verdict. [Appellant's brief at 27-28].

**Standard of Appellate Review.**

{¶51} A trial court is obligated to provide jury instructions that correctly and completely state the law. *Sharp v. Norfolk & W. Ry. Co.*, 72 Ohio St.3d 307, 312, 649 N.E.2d 1219 (1995). The jury instructions must also be warranted by the evidence presented in a case. *Estate of Hall v. Akron Gen. Med. Ctr.,* 125 Ohio St.3d 300, 2010-Ohio-1041, 927 N.E.2d 1112, ¶ 26. The question of whether a jury instruction is legally correct and factually warranted is subject to de novo review. Id.; *Cromer v. Children's Hosp. Med. Ctr. Of Akron,* 142 Ohio St.3d 257, 2015-Ohio-229, 29 N.E.3d 921, ¶ 22.

{¶52} In examining errors in a jury instruction, a reviewing court must consider the jury charge as a whole and "must determine whether the jury charge probably misled the jury in a matter materially affecting the complaining party's substantial rights." *Becker v. Lake Cty. Mem. Hosp. W.* 53 Ohio St.3d 202, 208, 560 N.E.2d 165, 171(1990). If there is no inherent prejudice in the inclusion of a particular jury instruction, prejudice must be affirmatively shown on the face of the record, and it cannot be presumed. *Wagner v. Roche Laboratories*, 85 Ohio St.3d 457, 461–462, 709 N.E.2d 162 (1999); *Cromer,* 142 Ohio St.3d 257, 2015-Ohio-229, 29 N.E.3d 921, ¶35. The general rule is that an erroneous instruction does not necessarily mislead a jury. Id.

{¶53} In *Neder v. United States*, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35(1999) the United States Supreme Court held that because the failure to properly instruct the jury is not in most instances structural error, the harmless-error rule of *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 applies to a failure to properly instruct the jury, for it does not *necessarily* render a trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.

**Issue for Appellate Review:** *Whether the record affirmatively shows the jury charge probably misled the jury in a matter materially affecting the Allison's substantial rights.*

{¶54} As we explained in our disposition of Allison's First and Second Assignments of Error, while the same underlying conduct resulted in each of the aggravated burglary counts, each count had distinct elements unrelated to the other offenses. In any event, the record fails to affirmatively show that Allison's substantial rights were violated by the trial court's jury instructions. The jury found Allison not guilty of two counts of aggravated burglary, thus negating any claim that Allison was prejudiced.

The result would have been the same had the trial court given only one instruction concerning aggravated burglary. Allison does not argue or point to evidence within the record to suggest otherwise.

{¶55}  Allison's Fourth Assignment of Error is overruled.

{¶56}  The judgment of the Stark County Court of Common Pleas is affirmed.

By Gwin, J.,

Baldwin, P.J., and

Wise, John, J., concur