[Cite as *State v. Allen*, 2023-Ohio-196.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 22-CA-000006 |
| MARIO ALLEN | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING:      Criminal appeal from the Guernsey County Court of Common Pleas, Case No. 19-CR-220

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      January 23, 2023

APPEARANCES:

For Plaintiff-Appellee

LINDSAY DONAHUE ANGLER
Guernsey County Prosecutor
409 Wheeling Avenue
Cambridge, OH 43725

For Defendant-Appellant

MICHAEL J. CONNICK
45 N. 4th Street, Ste. 2B
Zanesville, OH 43701

*Gwin, P.J.*

{¶1} Defendant-appellant Mario Allen ["Allen"] appeals his convictions and sentences after a jury trial in the Guernsey County Court of Common Pleas.

*Facts and Procedural History*

{¶2} On June 11, 2019, Trooper Scott Bayless of the Ohio State Highway Patrol initiated a traffic stop of a 2007 Buick Lucerne for a marked lanes violation. Trooper Bayless is a canine handler. 2T. at 248. Trooper Bayless had his canine partner in his patrol cruiser at the time of the traffic stop.

{¶3} The occupants of the vehicle were driver Kira Atkins, Kevin Swift, and Allen. Trooper Bayless approached the right side of the vehicle and testified that he could immediately smell the odor of burnt marijuana. 2T. at 254; 257; 278; 293[1]. Sergeant Bayless testified that Allen admitted the occupants of the car had been smoking a blunt. 2T. at 303. Trooper Seth Jones arrived to assist Trooper Bayless. Trooper Jones testified that he smelled raw marijuana. 1T. at 169; 182.

{¶4} The occupants were removed from their vehicle, patted down and placed in Trooper Jones' patrol vehicle. No weapons or contraband were removed from anyone's person. Both troopers then searched the vehicle and found marijuana and an empty THC cartridge. 1T. at 172; 181; 2T. at 260. At some point while the troopers were conducting the search, one, or both, of the troopers were advised that Allen had an active arrest warrant. 1T. at 172; 2T. at 260-61. Allen was then taken into custody due to his warrant and placed in the back of Trooper Bayless' cruiser. Ms. Atkins and Mr. Swift were permitted to return to their vehicle.

---

[1] For clarity, the jury trial transcript will be referred to as, "__T.__," signifying the volume and the page number.

**{¶5}** Ms. Atkins did not have a valid license, so Trooper Bayless went to his cruiser to write a traffic citation and Trooper Jones returned to his cruiser. Upon returning to his cruiser, Trooper Jones took the opportunity to review his in-car audio and video. Trooper Jones only testified as to his recollection of his observations because the recordings of the in-car audio and video were not retained by the Ohio State Highway Patrol.  Trooper Jones testified that he saw the motions of a hand-to-hand transaction in the back of the cruiser but did not see specific items. 1T. at 187; 2T. at 262-263.  More specifically, Allen's trial counsel and Trooper Jones had the following exchange:

Q. Okay.  And you are alleging that in the back of your cruiser, which, again, we don't have the footage for, that Mr. Allen removed something from his person and gave it to Ms. Atkins, that's what your alleging, correct?

A. Yes.

Q. Where did this come from on Mr. Allen?

A. The back of his pants.

Q. The back of his pants.  So as in a back pocket?

A. As in I don't know. I can't see from-the camera angles-we just have one camera in the back of our cruiser-I just know that he retrieved an item from behind his back and sitting up in the seat to where he's digging for the item, and then handing it to Ms. Atkins.

1T. at 186. Trooper Jones testified that he observed Allen and Swift both hand items to Ms. Atkins. 1T. at 176-177.

**{¶6}** Trooper Bayless testified that Trooper Jones then notified him that there had been a hand-to-hand transaction and the drugs were concealed.  This was done

via the use of hand signals developed between them over the years. 2T. at 260. Trooper Bayless testified that Ms. Atkins admitted to having contraband on her person and Allen, Mr. Swift and Ms. Atkins were transported to the Guernsey County Jail.

{¶7} While being processed to enter the jail, Allen refused to "squat and cough" to determine if he had concealed contraband on his person. 2T. at 266. This necessitated that Allen be taken to the hospital to be examined and cleared to enter the jail. Id.

{¶8} Allen was interviewed the following day by Sergeant Coy Lehman of the Ohio State Highway Patrol. 1T. at 216-217. Allen admitted the drugs that were found on Atkins belonged to him and that he had given them to her in the backseat of the patrol car. 1T. at 219[2].

{¶9} The drugs were analyzed and found to be: (1) 1.1959 grams of marijuana, (2) 3.6475 grams of cocaine packaged in 7 individual plastic bags, (3) 2.9384 grams of Fentanyl packaged in 14 individual plastic bags, and (4) a rock like substance containing Fentanyl. 1T. at 197-198. State's Exhibit B.

{¶10} After the presentation of evidence and instructions by the trial court, the jury returned a verdict of guilty on the Tampering with Evidence charge. The jury could not reach a verdict as to either the possession of cocaine charge or the possession of fentanyl related compound. The state elected to dismiss both of these counts.

{¶11} On January 24, 2022, the court sentenced Allen to a prison term of 24 months.

---

[2] No testimony concerning the identity of the item or items that Mr. Swift was alleged to have passed to Ms. Atkins is contained in the record before this Court.

Assignment of Error

{¶12} Allen raises one Assignment of Error,

{¶13} "I. THE STATE OF OHIO DID NOT PRODUCE SUFFICIENT EVIDENCE TO DEMONSTRATE BEYOND A REASONABLE DOUBT EACH AND EVERY ELEMENT OF THE OFFENSE OF TAMPERING WITH EVIDENCE AND, THEREFORE, APPELLANT' S CONVICTION IS CONTRARY TO LAW FOR LACK OF SUFFICIENCY, AS WELL AS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

I.

{¶14} In his sole Assignment of Error Allen argues that there is insufficient evidence to support his conviction. He further contends that his conviction is against the manifest weight of the evidence.

**Standard of Appellate Review– Sufficiency of the Evidence.**

{¶15} The Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...."  This right, in conjunction with the Due Process Clause, requires that each of the material elements of a crime be proved to a jury beyond a reasonable doubt.  *Alleyne v. United States*, 570 U.S. 99, 133 S.Ct. 2151, 2156, 186 L.Ed.2d 314 (2013); *Hurst v. Florida*, 577 U.S. 92, 136 S.Ct. 616, 621, 193 L.Ed.2d 504 (2016).  The test for the sufficiency of the evidence involves a question of law for resolution by the appellate court.  *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶30.  "This naturally entails a review of the elements of the charged offense and a review of the state's evidence."  *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶13.

**{¶16}** When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997)*; *Walker*, 150 Ohio St.3d at ¶30. "The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus. *State v. Poutney*, 153 Ohio St.3d 474, 2018-Ohio-22, 97 N.E.3d 478, ¶19. Thus, "on review for evidentiary sufficiency we do not second-guess the jury's credibility determinations; rather, we ask whether, '*if believed*, [the evidence] would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001), *quoting Jenks* at paragraph two of the syllabus; *Walker* 150 Ohio St.3d at ¶31. We will not "disturb a verdict on appeal on sufficiency grounds unless 'reasonable minds could not reach the conclusion reached by the trier-of-fact.'" *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 94, *quoting State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997); *State v. Montgomery,* 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶74.

**Issue for appellate review**: *Whether, after viewing the evidence in the light most favorable to the prosecution, the evidence, if believed, would convince the average mind that Allen was guilty beyond a reasonable doubt*

**{¶17}** Allen was convicted of Tampering with Evidence in violation of R.C. 2912.12, which provides in relevant part,

(A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:

(1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation…

{¶18} In order to find Allen guilty of tampering with evidence, the state had to prove that Allen (1) had knowledge that an official proceeding or investigation was in progress or likely to be instituted; and (2) altered, destroyed, concealed, or removed the potential evidence; (3) for the purpose of impairing the potential evidence's availability or value in such proceeding or investigation. *State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, 11 N.E.3d 1175, ¶ 11.

*Knowledge that an official proceeding or investigation was in progress or likely to be instituted*

{¶19} R.C. 2901.22(B) defines when a person acts "knowingly." The statute states:

A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

{¶20} Under this test, "'the evidence tampered with must have some relevance to an ongoing or likely investigation to support a tampering charge.'" *State v. Martin*, 151 Ohio St.3d 470, 2017-Ohio-7556, 90 N.E.3d 857, ¶ 111, *quoting Straley* at ¶ 16. The likelihood of an investigation is measured at the time of the alleged tampering.  *State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, 11 N.E.3d 1175, ¶ 19; State *v. Barry,* 145 Ohio St.3d 354, 2015-Ohio-5449, 49 N.E.3d 1248, ¶ 21.   Circumstantial evidence may be sufficient to support a conviction for tampering with evidence. *State v. Martin,* 151 Ohio St.3d 470, 2017-Ohio-7556, 90 N.E.3d 857, ¶ 112.

{¶21} The definition of "knowingly" does not encompass knowledge that a reasonably diligent person should, but does not, have. *State v. Barry*, 145 Ohio St.3d 354, 2015–Ohio–5449, 49 N.E.3d 1248, ¶ 24.   Consequently, "constructive knowledge is insufficient to prove that [an accused] knew that an investigation was ongoing or likely to be commenced." Id. at ¶ 25. "Ohio law does not impute constructive knowledge of an impending investigation based solely on the commission of an offense." Id. at ¶ 2.

{¶22} In *Barry*, the court determined that the evidence was legally insufficient to show that the defendant knew that an official proceeding or investigation was in progress or was likely to be instituted at the time she concealed drugs. In *Barry*, the defendant hid the drugs in her body before departing for a road trip. She intended to drive with a group of friends to West Virginia. While en route, a law enforcement officer stopped the defendant's vehicle. After questioning, the officer began to suspect that the defendant had hidden drugs inside her body. The officer then warned the defendant that he could obtain a warrant for a body cavity search if she did not cooperate. The defendant eventually admitted that she had concealed drugs inside her body.

**{¶23}** The Ohio Supreme Court concluded in *Barry* that the evidence failed to establish that the defendant "knew or could have known that a state trooper would stop her car * * * and begin an investigation of her for drug trafficking and drug possession" at the time she concealed the drugs. Id. at ¶ 3.  Rather, the court found that the defendant "concealed the drugs with a purpose to avoid detection by law enforcement and without knowledge of an impending or likely investigation." Id. The court thus concluded that the evidence was insufficient to support the defendant's tampering with evidence conviction.

**{¶24}** In *State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, 11 N.E.3d 1175, two narcotics detectives stopped Straley's car after observing it travel left of center. They suspected Straley of driving under the influence of alcohol, but when the search of her car revealed no contraband, the detectives decided not to arrest her. However, Straley needed to urinate while the officers were attempting to find her a safe ride home. An officer searched the area where she relieved herself and discovered a urine soaked cellophane baggie containing crack cocaine.  *Straley* at ¶ 19. Straley subsequently pleaded no contest to drug trafficking and possession of cocaine, and a jury convicted her of tampering with evidence. In affirming the appellate court's decision reversing Straley's tampering with evidence conviction, the Ohio Supreme Court explained "[t]here is nothing in the record to suggest that the officers were conducting or likely to conduct an investigation into trafficking or possession of cocaine when Straley discarded the baggie." Id.

**{¶25}** The Supreme Court's focus in *Straley* and *Barry* was upon the events that had transpired *at the time the suspects hid the evidence*. Unlike the facts of this case, there was nothing in those cases that would have drawn attention to their drug trafficking

activity. *Straley* and *Barry* concealed the contraband before they knew they would actually encounter the police. *Hiding the evidence was a preemptive measure as opposed to a reaction to a likely investigation of a recent criminal act. See, State v. Shaw,* 8th Dist. Cuyahoga No. 105111, 2018-Ohio-403, 105 N.E.3d 589, ¶21-23 (emphasis added).

**{¶26}** Atkins was lawfully stopped for a traffic infraction. Both officers testified that he smelled marijuana upon approaching the car. The occupants of the car were told that the officers were going to conduct a probable cause search of the car for contraband. 2T. at 256-258. The three occupants of the car were removed, patted down and placed inside Trooper Jones's cruiser. 2T. at 258. While in Trooper Jones's cruiser Allen and Swift pass what is later found to be drugs to Ms. Atkins. During the search of the car, an outstanding arrest warrant was found for Allen. 2T. at 260. Allen was arrested and placed into Trooper Bayless's cruiser. 1T. at 172-173; 2T. at 261.

**{¶27}** While Allen initially concealed the drugs on his person before embarking on the trip with Swift and Atkins, at the time Allen passed the drugs to Ms. Atkins he was aware that an investigation into possible drug activity had begun. He was told the officers were going to search to car and the troopers began to search the car. On these facts, we find a jury could properly infer that, at the time he passed the drugs to Atkins, Allen knew an official proceeding or investigation was likely to be instituted regarding possible drug use and possession and that Allen passed the drugs to Atkins with a purpose to impair the drugs availability in such proceeding or investigation. *Straley* at ¶11; R.C. 2921.12(A)(1).

**{¶28}** Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that

Allen, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted altered, destroyed, concealed, or removed any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation.

{¶29} We hold, therefore, that the state met its burden of production regarding the elements of tampering with evidence; accordingly, there was sufficient evidence to support Allen's conviction.

**Standard of Appellate Review – Manifest Weight.**

{¶30} As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient. *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith, 80 Ohio St.3d 89, 684 N.E.2d 668, 1997–Ohio–355*; *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001).

{¶31} Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, *supra,* 78 Ohio St.3d at 386-387, 678 N.E.2d 541(1997), *State v. Williams,* 99 Ohio St.3d 493, 2003-Ohio-4396, 794 N.E.2d 27, ¶83. When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony. *Thompkins* at 387, 678 N.E.2d 541, *citing Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652(1982) (quotation marks omitted); *State v. Wilson,* 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1244, ¶25, citing *Thompkins.*

**{¶32}** Once the reviewing court finishes its examination, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins, supra*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id.

**Issue for Appellate Review**: *Whether the jury clearly lost their way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.*

**{¶33}** We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. Based upon the foregoing and the entire record in this matter we find Allen's conviction is not against the sufficiency or the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided the matters before them. The jury heard the witnesses, evaluated the evidence, and was convinced of Allen's guilt.

**{¶34}** Upon review of the entire record, weighing the evidence and all reasonable inferences as a thirteenth juror, including considering the credibility of witnesses, we cannot reach the conclusion that the trier of facts lost its way and created a manifest miscarriage of justice. We do not find the jury erred when it found Allen guilty. Taken as a whole, the testimony and record contains ample evidence of Allen's responsibility for the crime. The fact that the jury chose to believe the testimony of the troopers does not,

in and of itself, render his convictions against the manifest weight of the evidence. While Allen is certainly free to argue that he did not know that an official proceeding or investigation was in progress at the time he passed the drugs to Atkins, on a full review of the record we cannot say that the jury clearly lost its way or created a manifest injustice. The state presented testimony and evidence from which the jury could have found all the essential elements of the offense proven beyond a reasonable doubt. The fact that the state may have relied on circumstantial evidence in proving Allen's guilt does not make his conviction any less sound.

### Inconsistent verdicts

{¶35} Allen next argues the finding by the jury that Allen was not guilty of possession of the drugs is inconsistent with the jury finding Allen guilty of tampering with evidence by passing the drugs to Atkins.

{¶36} In the case at bar, the jury's verdicts are not inconsistent. Tampering with Evidence in violation of R.C. 2912.12 does not require that the individual possess the evidence that he or she is alleged to have altered, destroyed, concealed, or removed with purpose to impair its value or availability as evidence in a pending investigation or an investigation that is or is about to be or likely to be instituted. For example, suppose a husband and wife are shopping and the wife removes a tube of lipstick from the shelf and conceals it in her purse. As the couple leave the store, they are stopped by store security. As security discusses the matter with the wife, husband removes the lipstick from his wife's purse and throws it into a nearby trash can. Clearly, the husband did not possess the lipstick concealed in his wife's purse. However, it can be argued that while knowing that an investigation into his wife's alleged theft of the item is or is likely to be instituted,

the husband destroyed, concealed or removed the lipstick with the purpose to impair its value or availability as evidence in any such investigation or proceeding.

**{¶37}** While the same underlying conduct resulted in each of the counts, each count had distinct elements unrelated to the other offense. Though inconsistency can indicate confusion or doubt on the part of jurors, it can also indicate compromise or mercy. *State v. Trewartha,* 165 Ohio App.3d 91, 2005-Ohio-5697, 844 N.E.2d 1218, ¶ 16 (10th Dist.).

**{¶38}** Accordingly, we reject Allen's argument alleging inconsistent verdicts as it is based on different counts as well as different elements.

**{¶39}** Allen's sole Assignment of Error is overruled.

**{¶40}** The judgment of the Guernsey County Court of Common Pleas is affirmed.

By Gwin, P.J.,

Hoffman, J., and

Delaney, J., concur